UNITED STATES of America,
Plaintiff-Appellee,

v.

Lawrence Michael DUFF,
Defendant-Appellant.

No. 86–1359.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 8, 1987.

Decided Oct. 26, 1987.

As Amended Nov. 16, 1987.

Leslie Osborne, Honolulu, Hawaii, for plaintiff-appellee.

Hayden Aluli, Honolulu, Hawaii, for defendant-appellant.

Before GOODWIN, BEEZER and THOMPSON, Circuit Judges.

GOODWIN, Circuit Judge:

Lawrence M. Duff appeals the district court's order revoking probation. Duff pleaded guilty to one count of conspiracy to possess heroin with intent to distribute, in violation of 21 U.S.C. § 846 (1982). On June 27, 1983, he was sentenced to three years in custody with all but six months suspended, and he was sentenced to five years of probation, to begin upon his release from prison.

The conditions of probation required Duff to refrain from violating any laws and to follow the instructions of his probation officer. The probation officer's instructions prohibited the purchase, possession or use of marijuana or narcotics. The instructions gave the probation officer the authority to search and seize Duff, but neither the probation conditions nor the instructions explicitly authorized drug testing.

On August 13, 1986, the probation officer ordered Duff to submit to a urine test for residual drug traces. The probation officer's adjustment report indicates that she ordered drug testing because the following factors suggested that Duff was using drugs: (1) he was in poor financial condition; (2) he was not gainfully employed; (3) the police were suspicious of him because of his involvement with a group that allegedly burglarized his home and because he allegedly filled out illegal prescriptions for Percodan; and (4) he had repeatedly refused to cooperate with his probation officer.

Duff submitted to three urine tests, on August 13, October 3, and October 7, 1986. The first two samples tested positive for marijuana and cocaine; the third sample tested positive for morphine. During an interrogation by three probation officers on October 7, Duff admitted using various drugs.

Duff's probation officer filed a revocation petition based on the positive drug test results. Duff filed a motion to exclude the urine test results as impermissibly obtained and his admissions as the tainted fruit of his urine tests. The district judge denied Duff's motion and revoked Duff's probation. Duff received a stay pending the outcome of this appeal.

We will overturn a probation revocation only if the district court abused its discretion. *See United States v. Dane,* 570 F.2d 840, 843 (9th Cir.1977), *cert. denied,* 436 U.S. 959, 98 S.Ct. 3075, 57 L.Ed.2d 1124 (1978). However, the question whether the district court properly interpreted the applicable statute and correctly resolved the defendant's constitutional claims is reviewable de novo as a question of law. *See Trustees of Amalgamated Ins. Fund v. Geltman Indus.,* 784 F.2d 926, 929 (9th Cir.) (interpretation and application of provisions of ERISA reviewed de novo), *cert. denied,* —— U.S. ——, 107 S.Ct. 90, 93 L.Ed.2d 42 (1986); *United States v. Feldman,* 788 F.2d 544, 550 (9th Cir.1986) (de novo review applied to the "ultimate issue" of whether search was lawful), *cert. denied,* —— U.S. ——, 107 S.Ct. 955, 93 L.Ed.2d 1003 (1987); *United States v. McConney,* 728 F.2d 1195, 1201–03 (9th Cir.) (en banc) (mixed question of law and fact that implicates constitutional rights should usually be treated as a question of law and reviewed de novo), *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

■ Duff does not contest the propriety of a district court ordering drug testing, a form of warrantless search, as a condition of probation. *Cf. United States v. Williams,* 787 F.2d 1182, 1185–86 (7th Cir. 1986); *Smith v. State,* 250 Ga. 438, 439–40, 298 S.E.2d 482, 483–84 (1983); *State v. McCoy,* 45 N.C.App. 686, 690–91, 263 S.E.2d 801, 804–05, *appeal dismissed,* 300 N.C. 377, 267 S.E.2d 681 (1980); *Isaacs v. State,* 351 So.2d 359, 360 (Fla.Dist.Ct.App. 1977). This case presents the narrow and novel question whether the probation officer had the power to order Duff to submit to drug testing even though the court had not explicitly imposed such a condition.

Under the Federal Probation Act,[1] 18 U.S.C. §§ 3651–3656 (1982 & Supp.III 1985), only the court may impose probation conditions. *See United States v. Crocker,* 435 F.2d 601, 603 (8th Cir.1971) (observing that "[f]ixing the terms and conditions of probation is a judicial act which may not be delegated"). However, 18 U.S.C. § 3655 requires probation officers to "use all suitable methods, not inconsistent with the conditions imposed by the court, to aid probationers and to bring about improvements in their conduct and condition." Section 3655 also requires probation officers to "keep informed concerning the conduct and condition of each probationer under [their] supervision."

Under the court's conditions of probation, Duff agreed to refrain from violating any law and to follow the probation officer's instructions. The probation officer's use of urinalysis to determine whether Duff was using illegal drugs was consistent with the court's condition that Duff not violate the law, and the deterrent effect of such testing was calculated to improve Duff's conduct. Furthermore, the testing allowed the officer to keep herself informed concerning Duff's use of drugs, as she was required to do by the language of 18 U.S.C. § 3655.

Duff argues, relying on *Crocker,* that the probation officer acted inconsistently with the conditions imposed by the court when she chose to impose a drug testing condition after the sentencing court did not impose such a condition. *See Crocker,* 435 F.2d at 603. However, *Crocker* is distinguishable in that the probation officer in that case established the draft registration requirement that was violated by the defendant. *See id.* at 603–04 (noting that the defendant's failure to register was not a continuing offense and thus did not violate the court's order to refrain from the violation of any law). By contrast, Duff violated the court-imposed requirement that he comply with all laws. The drug testing required by the probation officer did nothing more than monitor Duff's compliance with the express terms of the court's probation order. The numerous state cases cited by Duff for the proposition that the probation officer acted inconsistently with the probation order are not on point here because they were not decided under the Federal Probation Act, which expressly gives more discretion to probation officers. *See* 18 U.S.C. § 3655 (1982).

Duff observes that the probation officer could have sought a modification of the court's probation conditions if she wished to conduct urinalysis. *See* 18 U.S.C. § 3651 (1982) (allowing modification of the conditions of probation). Duff implies that she was required to do so. We agree with Duff that it would have been preferable for the probation officer to obtain such modification before requiring the drug test. *See Macias v. State,* 649 S.W.2d 150, 152–53 (Tex.App.1983) (observing that the express inclusion of drug testing as a probation condition deters drug possession and promotes rehabilitation). However, we believe that § 3655 gave the probation officer the

---

1. In 1984, Congress replaced the Federal Probation Act with the Sentencing Reform Act of 1984, which was Chapter II of the Comprehensive Crime Control Act of 1984. *See* Pub. L. No. 98–473, §§ 211–212, 98 Stat. 1987 (1983). The new Act will not take effect until November 1, 1987. *See* Pub. L. No. 98–473, § 235, 98 Stat. 1987, 2031 (1984), *amended by* Pub. L. No. 99– 217, § 4, 99 Stat. 1728 (1987). After October 1987, the section entitled "Duties of Probation Officers," 18 U.S.C. § 3655 (1982 & Supp. III 1985), will be codified at 18 U.S.C. § 3603. Sentencing Reform Act of 1984, Pub. L. No. 98–473, § 212, 98 Stat. 1987, 2002 (1984); *see also id.* at 2001–04.

authority to order such testing without obtaining modification.

■ We find no due process violation in the fact that Duff was not given notice before the drug testing that he would be subject to such testing. "[Although] [i]t is an essential component of due process that individuals be given fair warning of those acts which may lead to a loss of liberty," *Dane*, 570 F.2d at 843, Duff had ample notice from the general terms of the court's probation conditions and the specific terms of the probation officer's instructions that he was prohibited from using illicit drugs. *See id.* (observing that "formal conditions of probation serve the purpose of giving notice of proscribed activities"). Due process does not require that prior notice be given of the techniques through which noncompliance will be detected.

We thus hold that the probation officer's decision to order Duff to undergo drug screening was not inconsistent with the trial court's failure to require such testing. We now consider Duff's claim that the drug testing was unreasonable and thus violated his fourth amendment rights.

We assume but do not decide that the taking and testing of a urine sample constitutes a search under the fourth amendment. *See Spence v. Farrier*, 807 F.2d 753, 755 (8th Cir.1986); *United States v. Williams*, 787 F.2d 1182, 1185 n. 5 (7th Cir.1986); *Shoemaker v. Handel*, 619 F.Supp. 1089, 1098 (D.N.J.1985), *aff'd*, 795 F.2d 1136 (3d Cir.), *cert. denied*, — U.S. ——, 107 S.Ct. 577, 93 L.Ed.2d 580 (1986); *see also Schmerber v. California*, 384 U.S. 757, 767–68, 86 S.Ct. 1826, 1833–34, 16 L.Ed.2d 908 (1966) (holding that the fourth amendment is implicated by the withdrawal of blood to test its alcohol content).

■ Although the fourth amendment's requirement that searches be "reasonable" is applicable to probationers, such probationers "do not enjoy 'the absolute liberty to which every citizen is entitled, but only ... conditional liberty properly dependent on observance of special [probation] restrictions.'" *Griffin v. Wisconsin*, — U.S. ——, 107 S.Ct. 3164, 3168, 97 L.Ed.2d 709 (1987) (*quoting Morrissey v. Brewer*, 408 U.S. 471, 480, 92 S.Ct. 2593, 2599, 33 L.Ed.2d 484 (1972)); *see United States v. Consuelo-Gonzalez*, 521 F.2d 259, 265–66 (9th Cir.1975) (en banc) (observing that probation authorities have a "special and unique interest in invading the privacy of [probationers] under their supervision") (quoting *Latta v. Fitzharris*, 521 F.2d 246, 249 (9th Cir.)(en banc), *cert. denied*, 423 U.S. 897, 96 S.Ct. 200, 46 L.Ed.2d 130 (1975)).

■ In some cases, probation officers may search probationers without obtaining a warrant and under circumstances when there is less than probable cause. *See Griffin*, 107 S.Ct. at 3168 (observing that supervision of probationers is a " 'special need' of the [s]tate permitting a degree of impingement upon privacy that would not be constitutional if applied to the public at large"); *see also Consuelo-Gonzalez*, 521 F.2d at 265–66. However, the search must be reasonable and must be based upon the probation officer's reasonable belief that it is necessary to the performance of her duties. *See Latta v. Fitzharris*, 521 F.2d 246, 250–52 (9th Cir.) (en banc), *cert. denied*, 423 U.S. 897, 96 S.Ct. 200, 46 L.Ed.2d 130 (1975).

■ The urine testing employed here was narrowly tailored to determine whether Duff was using drugs and was less intrusive of Duff's privacy than other methods of monitoring, such as continuous surveillance or repeated searches of Duff's home and property. The probation officer had a reasonable suspicion that Duff might be using drugs. Duff was not gainfully employed, he had allegedly filled out false prescriptions for Percodan, he allegedly was involved with a group that burglarized his house, and he consistently failed to meet with or to cooperate with his probation officer. Because Duff had been convicted for drug possession, the probation officer reasonably believed that drug testing was necessary "to foster the offender's reformation and to preserve the public's safety." *Williams*, 787 F.2d at 1185.

Because we hold that the probation officer possessed the authority to require Duff to submit to drug testing, we reject Duff's argument that the results of the drug test and his admissions should be excluded. The trial court's decision to revoke probation is affirmed.